NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIP COUTURE, INC., <br><br> Plaintiff, <br><br> v. <br><br> C.H. ROBINSON INTERNATIONAL, INC., <br><br> Defendant. | Civil Action No.: 16-3596 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant C.H. Robinson International, Inc.'s Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1. (ECF No. 16). Plaintiff VIP Couture, Inc. has submitted an opposition (ECF No. 23), which Defendant has replied to (ECF No. 24). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Motion for Summary Judgment.

# I. BACKGROUND[1]

## A. The Parties

Plaintiff VIP Couture, Inc. is a corporation that is authorized to conduct business in the State of New Jersey. (ECF No. 1-1 ¶ 1). Aleksandr Gleyzer is Plaintiff's owner and president. (Pl. SMF ¶ 1). Defendant C.H. Robinson International, Inc. is a corporation that does business in New Jersey and maintains its corporate headquarters in Minnesota. (ECF No. 1-1 ¶ 2). Both Raffaele Napolitano and Colin Edwards are "account managers" at Defendant. (Def. SMF ¶¶ 5, 7). Non-party Trading Fashion Consultants ("TFC") is in the business of selling and/or shipping merchandise to entities around the world. (ECF No. 1-1 ¶ 6; Def. SMF ¶¶ 2, 4; Pl. SMF ¶ 2). Cedric Vottero is employed by TFC. (Def. SMF ¶ 19; Pl. SMF ¶ 2).

## B. Pertinent Facts

In April 2014, Plaintiff purchased a shipment of Burberry® and Lacoste® shirts from TFC for $118,000. (Pl. SMF ¶ 2). Vottero coordinated and facilitated the purchase between Plaintiff and TFC. (Id.). The shirts were located in China at the time of the purchase. (Id.). Plaintiff also retained Defendant, as well as its successor Phoenix International, to transport the shirts from China to Plaintiff. (Def. SMF ¶ 9; Pl. SMF ¶ 3). Gleyzer executed a "Customs Power of Attorney," which governed the relationship between the parties, though it is disputed whether the Power of Attorney was between Plaintiff and Defendant or Plaintiff and Defendant CHR's successor,

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 16-2, Defendant's Rule 56.1 Statement of Facts ("Def. SMF"); ECF No. 23-2, Plaintiff's Rule 56.1 Statement of Facts ("Pl. SMF"); ECF No. 23-1, Plaintiff's Responses to Defendant's Statement of Material Facts ("Pl. Opp. SMF"); ECF No. 24-1, Defendant's Responses to Plaintiff's Statement of Facts ("Def. Opp. SMF")). To the extent that Plaintiff admits to any Material Facts as stated by Defendant, the Court will cite only to "Def. SMF" and the relevant paragraph number. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

Phoenix. (Def. SMF ¶ 9; Pl. Opp. SMF ¶ 9). Said Power of Attorney explicitly states "that the terms and conditions of service and relationship to the parties shall be construed according to the laws of the State of Illinois *without giving consideration to [sic] principals of conflict of law.*" (Def. SMF ¶ 12) (emphasis added).

Plaintiff had utilized Defendant's services on at least four occasions prior to the shipment in question. (Def. SMF ¶ 17). Concerning the subject transaction, Gleyzer contacted Napolitano with respect to same. (Def. SMF ¶ 15). Napolitano provided Gleyzer with a quote for the shipping services. (Id.). Thereafter, Defendant came into possession of the ordered shirts and kept said shirts at Defendant's warehouse in the United Kingdom. (Def. SMF ¶¶ 2, 19). Plaintiff prepaid TFC for the shirts, and the attached invoice indicated that Plaintiff, at the very least, had paid a deposit to TFC for the shirts. (Pl. SMF ¶¶ 4-5).[2] Plaintiff ultimately paid the entire balance due to TFC on May 16, 2014, and notified Defendant of same. (Pl. SMF ¶ 6).

At some point after the merchandise was in Defendant's possession, Plaintiff began to question the authenticity of the shirts. (Pl. SMF ¶ 12).[3] Since Plaintiff could not authenticate the

---

[2] The Court notes that Defendant's Response to Plaintiff's Statement of Undisputed Material Facts responds to Pl. SMF ¶ 5 in the following manner: "Denied." *See* Def. Opp. SMF ¶ 5. However, Defendant does not explain why it denies this statement and nowhere within Defendant's Response to Plaintiff's Statement of Undisputed Material Facts or Defendant's own Statement of Undisputed Material Facts is there any explanation as to why Defendant denies this statement. (*See* Def. Opp SMF; Def. SMF). Accordingly, the Court treats the statements contained at Pl. SMF ¶ 5 as undisputed. *See* L. Civ. R. 56.1(a)("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; *any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.*")(emphasis added).

[3] The Court notes that Defendant's Response to Plaintiff's Statement of Undisputed Material Facts responds to Pl. SMF ¶ 12 in an unresponsive manner. Specifically, Defendant responds: "Denied as stated. The order was cancelled and the stored shirts were properly given to Cedric Vottero because a bailment was created between TFC and [Defendant] CHR, with Cedric on behalf of TFC paying the freight and storage charges." (Def. Opp. SMF ¶ 12). This response is insufficient for two reasons. First, the response does not address the substance of Plaintiff's statement; mainly that Plaintiff questioned the authenticity of the merchandise. Additionally, Defendant makes this bare assertion in response to Plaintiff's Statement of Undisputed Material Facts, and does not support its response with any citation to the record. Accordingly, the Court shall treat Pl. SMF ¶ 12 as undisputed. *See* L. Civ. R. 56.1(a).

shirts, it sought to cancel the order. (Id.).[4] By Defendant's own admission, Plaintiff, through Gleyzer, "requested that the cargo be stored because he was questioning the authenticity of the cargo." (Def. SMF ¶ 21). Gleyzer also mentioned to Napolitano that he was potentially going to cancel the order. (Id.). This message was relayed to Defendant, but Plaintiff could not cancel the order since it was already delivered to Defendant's warehouse.[5] (Pl. SMF ¶ 12; Def. SMF ¶ 21). Plaintiff further advised Defendant "that Plaintiff was the 'owner of this stock legally' and it could not be moved to a subsequent Canada buyer *without Plaintiff's authorization*." (Pl. SMF ¶ 14) (emphasis added).

Nonetheless, after various email exchanges, Defendant returned the shirts to TFC. (Def. SMF ¶ 23). Vottero, "on behalf of TFC, paid all release related storage and transport charges to get the cargo back." (Id.). Plaintiff asserts that Defendant returned its merchandise, without prior authorization from Plaintiff, despite knowing that Plaintiff was the rightful owner. (*See generally* ECF No. 1-1; *see also* Def. SMF ¶ 2; Pl. SMF ¶¶ 26-30). Defendant argues that it was without knowledge that Plaintiff was the proper owner of the goods. (Def. SMF ¶¶ 22, 28-29, 32).

Accordingly, on May 4, 2016, Plaintiff instituted this action in the Superior Court of New Jersey – Middlesex County, Law Division, Civil Part asserting the following causes of action: Count I – Breach of Agreement; Count II – Negligence; Count III – Breach of Covenant of Good Faith and Fair Dealing; and Count IV – Trespass to Chattels. (ECF No. 1-1). Defendant timely removed the matter to this Court on June 21, 2016. (ECF No. 1). Defendant also answered on the same date. (ECF No. 2).

---

[4] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[5] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.

4

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. ANALYSIS

Preliminarily, the Court finds that, regardless of Defendant's assertion that United Kingdom law is applicable to this matter, Illinois law is the applicable law to this action. In resolving choice of law issues, this Court applies the choice of law analysis of New Jersey, the state in which the Court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). In New Jersey, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey

public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n. 21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992)); *see also N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 568-69 (1999). Where an agreement's choice of law provision is "broad and all-encompassing," the provision "encompasses all tort claims that may arise from the [agreement]." *Sullivan v. Sovereign Bancorp Inc.*, 33 F. App'x 640, 642 (3d Cir. 2002); *see also Verizon N.J., Inc. v. DMJM Harris, Inc.*, 2009 WL 1283173, at *4 (D.N.J. May 1, 2009) (holding that a contract's forum selection clause applied to tort claims because the claims "stemmed from the performance of the contract itself"); *Pro v. Hertz Equip. Rental Corp.*, 2008 WL 5218267, at *5 (D.N.J. Dec. 11, 2008) ("Choice of law clauses that use the language 'governed and construed by' . . . are considered to be broad capturing both contract and tort claims, particularly tort claims that relate to the contract."), *amended on other grounds*, 2009 WL 1010622 (D.N.J. Feb. 3, 2009); *Delaney v. Am. Express Co.*, 2007 WL 1420766, at *3, *5 (D.N.J. May 11, 2007) (applying New Jersey law to all of the plaintiff's claims, including fraud claims, where the contract at issue stated that it was "governed by the laws of the state in which it is delivered"). Here, the Power of Attorney, that Defendant itself *explicitly* attempts to rely on in support of its Motion for Summary Judgment, clearly states that Illinois law governs the relationship between the parties without any consideration for the principles of choice of law. Accordingly, consistent with the above stated law, this Court must apply Illinois law to this matter.

### A. Counts I and III – Breach of Agreement/Breach of the Implied Covenant of Good Faith and Fair Dealing

To succeed on a claim for breach of contract under Illinois law, a plaintiff must show: 1) the existence of a valid contract with the defendant; 2) defendant's breach of that contract; 3)

plaintiff's performance under the contract; and 4) damages to plaintiff resulting from such breach. *See Van Der Molen v. Wash. Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 824 (Ill. App. Ct. 2005). Pursuant to Illinois law, contract formation requires only the existence of an offer, an acceptance, and consideration. *Hubble v. O'Connor*, 291 Ill. App, 3d 974, 979 (Ill. App. Ct. 1997); *Martin v. Gov't Emps. Ins. Co.*, 206 Ill. App. 3d 1031 (Ill. App. Ct. 1990). The offeror has complete control over an offer and can prescribe that the offeree must sign the contract to accept it; but contract formation does not require a signature unless the offer explicitly governs the mode of acceptance. *La Salle Nat. Bank v. Vega*, 167 Ill. App. 3d 154, 161-62 (Ill. App. Ct. 1988). An offer may be accepted, even when the offeree is silent, if the offeree accepts the benefit of said offer with the knowledge that the offeror expects the benefit of the bargain. *Boomer v. A T & T Corp.*, 309 F.3d 404, 414-15 (7th Cir. 2002). Moreover, an agent acting with any authority, be it apparent or express, may enter into a contract on behalf of the principal. *See, e.g., Weil, Freiburg, & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 385 (Ill. App. Ct. 1991); *see also Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2002).

In support of its motion, Defendant asserts that it is entitled to summary judgment on the breach of agreement claim because it properly released the shirts to TFC and that liability should be limited to the amount contained in the Power of Attorney. (ECF No. 16-1 at 8-11).[6] In opposition, Plaintiff asserts that there is no valid agreement between the parties, but rather, the agreement was with Plaintiff and Defendant's successor Phoenix. (ECF No. 23 at "Point II").

Here, the Court finds that there is a genuine issue of material fact as to whether the parties in this case ever entered into a valid agreement. The record is devoid of any evidence that tends

---

[6] The Court notes that these are the only two arguments advanced by Defendant in support of its summary judgment as to all claims. (*See generally* ECF No. 16-1).

7

to show whether or not Defendant was bound by the agreement entered into by Plaintiff and Phoenix. This conclusion is buttressed by Defendant's own arguments. Indeed, Defendant asserts that the parties are bound by the agreement, but then asks this Court to ignore the choice of law clause in favor of United Kingdom law. (ECF No. 16-1 at 8-11 *cf.* ECF No. 16-1 at 7-8). The Court cannot grant summary judgment as to the breach of agreement claim without additional proof supporting the proposition that the parties engaged in this action are bound by the Power of Attorney. Hence, summary judgment is inappropriate since there is a genuine issue of material fact with respect to the existence of a binding agreement between the parties.

The above logic also applies to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Under Illinois law, "every contract implies good faith and fair dealing between the parties to it." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). The purpose of this implied covenant is "to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 823 (N.D. Ill. 2010). However, it is not an "independent source of duties for the parties to a contract." *Beraha*, 956 F.2d at 1443. Thus, the implied covenant of good faith and fair dealing "cannot be used to create additional contractual terms" or act as an independent source of liability. *Pharm. Horizons, Inc. v. SXC Health Solutions, Inc.*, 2012 WL 1755169, at *3 (N.D. Ill. May 15, 2012); *see also Suburban Ins. Servs., Inc. v. Va. Sur. Co.*, 752 N.E.2d 15, 19 (Ill. App. Ct. 2001).

Based on the above Illinois law, a claim for breach of the implied covenant of good faith and fair dealing may not stand alone. Rather, as noted above, such a claim may only lie when a

valid agreement exists between the parties. As discussed, there is a genuine issue of material fact regarding whether or not the parties have a valid agreement between them. Because of this, the Court must also deny summary judgment with respect to the claim for breach of the implied covenant of good faith and fair dealing since said claim's validity turns on whether or not a valid agreement between Plaintiff and Defendant exists; a determination that the Court cannot make based on the record before it. Accordingly, the Court denies Defendant's Motion for Summary Judgment with respect to Plaintiff's breach of agreement and breach of the implied covenant of good faith and fair dealing claims.

### B. Negligence/Trespass to Chattels

A Plaintiff asserting a negligence claim under Illinois law "must establish the existence of a duty owed [by the defendant] to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Choate v. Ind. Harbor Belt R.R. Co.*, 980 N.E.2d 58, 64 (Ill. Sup. Ct. 2012). "A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Choate*, 980 N.E.2d at 64 (citations omitted). "Absent a duty, 'no recovery by the plaintiff is possible as a matter of law.'" *Id.* (quoting *Vesey v. Chi. Hous. Auth.*, 145 Ill. 2d 404, 411 (1991)).

Here, Plaintiff's negligence claim rests upon the assertion that Defendant was aware that Plaintiff had paid for the shirts, and was therefore the lawful owner of same. (*See* ECF No. 23 at "Point II"). Plaintiff further asserts that Defendant was aware that Plaintiff disputed the authenticity of the shirts and "requested that the cargo be stored because [it] was questioning the authenticity of the cargo." (Def. SMF ¶ 21). Accordingly, Plaintiff claims that Defendant was

negligent when it acted in an unreasonable manner, under the circumstances, by unilaterally choosing to return the shirts to TFC, despite knowing that Plaintiff was the owner and with disregard to Plaintiff's request that the shirts be stored with Defendant. (ECF No. 23 at "Point II"; *see also* Def. SMF ¶ 2; Pl. SMF ¶¶ 26-30; *see generally* ECF No. 1-1).

Defendant argues that it was not negligent because it was not aware that Plaintiff had paid for the shirts. (ECF No. 16-1 at 8). Defendant bolsters its position with, albeit somewhat self-serving, deposition testimony from both Napolitano and Edwards. (Pl. SMF ¶¶ 22, 28, 32). Specifically, Defendant states that Napolitano never knew who the rightful owner of the shirts was and was unaware that Plaintiff had prepaid for the shirts. (Pl. SMF ¶¶ 22, 32). Defendant also asserts that Edwards was under the impression that the shirts were not paid for when Gleyzer questioned the authenticity of the shirts and sought to cancel the order. (Pl. SMF ¶¶ 21, 25, 28). Accordingly, Defendant avers that it did not breach any duty to Plaintiff because it was completely unaware that Plaintiff was the owner of the shirts. (ECF No. 16-1 at 8).

The Court finds that summary judgment is inappropriate with regards to Plaintiff's negligence claim. This is because there is a genuine issue of material fact with respect to Defendant's knowledge as to who the rightful owner of the shirts was. While Defendant does present some evidence that it was without this knowledge, Plaintiff has presented equally persuasive evidence that Defendant was in fact aware that Plaintiff had paid for the shirts. Moreover, this Court must review the facts before it in a light most favorable to the non-moving party, which, in this case, is Plaintiff. Whether or not Defendant was aware of the fact that Plaintiff owned the shirts is relevant because that knowledge would have created a duty for Defendant to safeguard Plaintiff's property, in a reasonable fashion, until the dispute regarding the authenticity

was resolved. In other words, if Defendant knew Plaintiff owned the shirts, coupled with the fact that Plaintiff asked Defendant to store the shirts, then Defendant would have had a duty to maintain the shirts for Plaintiff. However, the outcome may be different if Defendant truly did not know if Plaintiff was the lawful owner of the shirts, and reasonably believed that the shirts should be returned to TFC. Accordingly, the Court must deny summary judgment on the negligence count because the Court cannot ascertain this crucial fact from the record before it.

The above logic extends to Plaintiff's claim for trespass to chattels. Trespass to chattels under Illinois law involves an injury to or interference with possession of personal property, with or without physical force. *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016); *see also Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005). This tort on property is committed by intentionally (1) dispossessing another of a chattel; or (2) using or intermeddling with a chattel in the possession of another. *Sotelo*, 384 F. Supp. 2d at 1229 (citing Restatement (Second) of Torts § 217 (1965)). The Restatement Second of Torts explains that a dispossession may be committed by intentionally (1) taking a chattel from the possession of another without the other's consent; (2) obtaining possession of a chattel from another by fraud or duress; (3) barring the possessor's access to a chattel; (4) destroying a chattel while it is in another's possession; or (5) taking a chattel into the custody of the law. *See* Restatement (Second) of Torts § 221 (1965). "Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability" for this tort. *Sotelo*, 384 F. Supp. 2d at 1229 (citing Restatement (Second) of Torts §218(b)(1965)).

In order for Defendant to succeed on its Motion for Summary Judgment, which seeks judgment in its favor as to Plaintiff's trespass to chattels claim, it must show that it believed that

TFC, and not Plaintiff, was the true owner of the shirts. This is because if Defendant knew, or believed it was possible, that Plaintiff was the owner of the shirts then it had a responsibility to not interfere with Plaintiff's ownership rights in the shirts. However, as explained above, there is a genuine issue of material fact as it pertains to Defendant's understanding as to who the true owner of the shirts was. Accordingly, summary judgment is inappropriate with regards to Plaintiff's trespass to chattels claim.

## **CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment is denied. An appropriate Order accompanies this Opinion.

DATED: December 28, 2017

JOSE L. LINARES
Chief Judge, United States District Court